IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:                                                    Case No. **07-03876-lmj7**

**Mary S. McKeever,**                                                [UNPUBLISHED]
**d/b/a Mary McKeever, Inc.,**

        Debtor

**MEMORANDUM OF DECISION**
**(date entered on docket: April 1, 2011)**

The United States Trustee for Region 12 ("U.S. Trustee") filed a motion to dismiss this Chapter 7 case pursuant to 11 U.S.C. section 707(b)(1). That section permits a court to dismiss a Chapter 7 case brought by an individual debtor with primarily consumer debts if the court finds that allowing the case to proceed as a liquidation case would be an abuse of the provisions governing Chapter 7. Relying on paragraph (3) of section 707(b),[1] the U.S. Trustee asserts that Debtor Mary S. McKeever d/b/a Mary McKeever, Inc. ("Debtor") filed her Chapter 7 case in bad faith or the totality of the circumstances of the Debtor's financial circumstances demonstrates abuse. Debtor disagrees. Having reviewed the record and having considered the arguments of the parties, the Court enters its decision in favor of Debtor.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1334 and the standing order of reference entered by the U.S. District Court for the Southern District of Iowa. This is a core matter under 28 U.S.C. section 157(b)(2)(A) and (O).

---

[1] The U.S. Trustee also relied on paragraph (2) of 11 U.S.C. section 707(b), the statutory means-test, but subsequently withdrew that ground for dismissal based on this Court's adoption of the reasoning and conclusion in decisions like <u>Fokkena v. Hartwick</u>, 373 B.R. 645, 653-56 (D. Minn. 2007) (for the purpose of the means-test, a debtor may deduct payments on a secured debt for which the debtor is contractually obligated as of the petition date regardless of any facts suggesting the debtor is not or will not be making those payments).

BACKGROUND

On November 13, 2007 Debtor filed a voluntary Chapter 7 petition. On Schedule A (Real Property), Debtor reported a legal interest in real estate located at 1609 Skyline Drive, Council Bluffs, IA ("1609 Skyline Drive") and having a current fair market value of $325,000.00. On her Statement of Intention, Debtor designated an intent to surrender that property.[2]

On Schedule D (Creditors Holding Secured Claims), Debtor reported she owed $346,097.65 to secured creditors at the time of filing. The largest portion of this amount related to a $339,735.85 secured mortgage claim on 1609 Skyline Drive. On Schedule E (Creditors Holding Unsecured Priority Claims), Debtor reported she owed $581.00 in unsecured priority debt. On Schedule F (Creditors Holding Unsecured Nonpriority Claims), Debtor reported she owed $82,233.65 in unsecured nonpriority debt. The parties do not dispute that Debtor's debts are primarily consumer debts.

On Schedule I (Current Income of Individual Debtor(s)), Debtor reported she was divorced with two dependent teenage daughters and had been employed for nine years as a court reporter for the State of Nebraska. Debtor indicated her average net monthly income was $5,140.75. The U.S. Trustee contends Debtor erroneously deducted a $60.00 voluntary parking fee as a payroll deduction from her regular income and erroneously included $391.77 in income from the operation of a court reporting transcription business, meaning her average net monthly income should be $4,808.98.

On Schedule J (Current Expenditures of Individual Debtor(s)), Debtor reported average monthly expenses of $6,853.98. The U.S. Trustee contends that figure should

---

[2] On November 26, 2007 Citi Residential Lending, Inc. filed a motion for relief from the automatic stay with respect to 1609 Skyline Drive. On December 14, 2007 the Court granted the uncontested motion.

be $3,489.21 based on proposed reductions pursuant to National and Local Standards promulgated by the Internal Revenue Service ("IRS") and the Census Bureau for allowable living, transportation, housing and utilities expenses. In addition to those proposed reductions, the U.S. Trustee's calculation of Debtor's current monthly expenditures eliminates $696.92 in regular monthly expenses from the operation of Debtor's court reporting transcription business because those expenses allegedly exceed Debtor's monthly income from that business.

Based on his adjustments to Debtor's monthly income and expenses, the U.S. Trustee argues that the totality of the circumstances of Debtor's financial situation demonstrates abuse of the provisions of Chapter 7 because Debtor has $1,319.77 in monthly disposable income, which amounts to $47,511.72 over three years ($1,319.77 x 36) and $79,186.20 over five years ($1,319.77 x 60) or unsecured debt service of 57 percent in three years ([$47,511.72 x 100] ÷ $82,814.65) and unsecured debt service of 95 percent in five years ([$79,186.20 x 100] ÷ $82,814.65). Based on the actual figures appearing on Schedules I and J, Debtor contends she has negative monthly income of $1,713.23, making any meaningful repayment to unsecured creditors impossible.

## APPLICABLE LAW

In a case in which the 11 U.S.C. section 707(b)(2) presumption of abuse does not arise or is rebutted, a court nevertheless may dismiss the case for abuse under 11 U.S.C. section 707(b)(3). 11 U.S.C. section 707(b) provides, in relevant part:

> (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.
> . . . .

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
> (A) whether the debtor filed the petition in **bad faith**; or
> (B) the **totality of the circumstances** (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) **of the debtor's financial situation** demonstrates abuse.

11 U.S.C. §§ 707(b)(1) and (3) (emphasis added).

When considering whether a Chapter 7 petition was filed in bad faith under 11 U.S.C. section 707(b)(3)(A), a court "focuses on the debtor's conduct." In re Honkomp, 416 B.R. 647, 649 (Bankr. N.D. Iowa 2009) (citing In re Booker, 399 B.R. 662, 667 (Bankr. W.D. Mo. 2009)).  When considering the totality of the circumstances under 11 U.S.C. section 707(b)(3)(B), "a court should consider primarily, if not exclusively, the Debtors' ability to pay." Id.  Further, in examining the totality of the circumstances, a court may consider the debtor's actual and anticipated financial situation over the applicable Chapter 13 commitment period.  Morse v. Rudler (In re Rudler), 576 F.3d 37, 51 (1st Cir. 2009); In re Chapman, 431 B.R. 216, 220 (Bankr. D. Minn. 2010) ("the 'totality of the circumstances' option….is usually advanced by an analysis centered on ability to fund a hypothetical Chapter 13 plan, á la the prevailing construction of the 'substantial abuse' provisions of pre-BAPCPA 11 U.S.C. section 707(b)") (citations omitted).

## DISCUSSION

Though the U.S. Trustee included bad faith as a basis for dismissal in his motion, he did not pursue that argument at the conclusion of the evidence.  Moreover, the record would not support a finding that Debtor engaged in any bad faith conduct.

Consequently, resolution of the pending controversy requires the Court to determine whether dismissal is appropriate under a totality of the circumstances analysis.

## Monthly Income

Debtor's scheduled average net monthly income is $5,140.75 but the U.S. Trustee would reduce that amount by $331.77 to $4,808.98. Specifically, the U.S. Trustee would eliminate the $60.00 nonmandatory payroll deduction on Line 4 of Schedule I and would omit the $391.77 regular income from the operation of a business on Line 7 of Schedule I.

*Payroll Deduction for Parking (Schedule I, Line 4).* Debtor's Exhibit 3, a letter signed by the Financial Officer for the Supreme Court of Nebraska's Administrative Office of the Courts & Probation, indicates that Debtor is not required to have the $60.00 deducted from her monthly paycheck but that it is necessary for Debtor to park somewhere in downtown Omaha. Though the U.S. Trustee questioned whether the parking fee could be reduced by Debtor choosing a different parking facility, the author of the letter included a comment that the parking fee for the facility where Debtor currently parks is no higher than what she would encounter if she parked elsewhere in the downtown area.

The U.S. Trustee also questioned why Debtor could not commute to and from work via public transportation. L. Todd Vandenberg, the U.S. Trustee's Bankruptcy Analyst for the Southern District of Iowa, testified that his research indicated there was a bus route close to Debtor's home and place of employment and that a monthly bus pass would cost her $50.00. Debtor testified that she drives her two teenage daughters to and from school and, when emergencies occasionally arise during the work day, she

needs immediate access to a vehicle.  Though the U.S. Trustee argues that Debtor's oldest daughter could drive her sister and herself to school or the daughters could take advantage of other options like public transportation or carpooling with friends, the Court observes that there would be additional costs involved with at least two and likely all three of those options.  Accordingly, the Court finds that Debtor's monthly payroll deduction for parking is reasonable and necessary.

*Regular Income from Operation of Business (Schedule I, Line 7)*.  Debtor has been operating a court reporting transcription business for a number of years.  The U.S. Trustee would eliminate the $391.77 monthly business income on Schedule I because Schedule J reflects monthly business expenses in the amount of $696.92.   When questioned about how she arrived at the business income figure on Schedule I, Debtor asserted that $391.77 was a monthly average of the income made by the business during 2007.

While the Court agrees it would be questionable to continue a business that encounters a financial loss each month, Debtor's Exhibit 6 consists of her 2007 U.S. Individual Income Tax Return that reflects business income of $1,254.00 on Line 12 of Form 1040 and on Line 31 of Schedule C (Profit or Loss From Business).  Though this information may be inconsistent with information on Schedule I and on Form 22A (Chapter 7 Statement of Current Monthly Income and Means-Test Calculation) and with Debtor's testimony, nothing in the record supports finding that the tax return is not accurate.  Accordingly, dividing the annual business income by twelve months yields a monthly income figure of $104.50.

Based on no elimination of the $60.00 payroll deduction for parking and a reduction in regular income from the court reporting transcription business from $391.77 to $104.50, the Court finds that Debtor's net monthly income is $4,853.48.

### Monthly Expenses

The parties dispute whether Debtor has average monthly expenses of $6,853.98 as argued by Debtor or $3,489.21 as argued by the U.S. Trustee.  With the exception of Debtor's home mortgage payment and related expenses, the U.S. Trustee does not contend that the expenses listed on Schedule J are not the actual amounts Debtor incurs on a routine basis.  Rather, the U.S. Trustee questions whether the amounts are reasonable and necessary in relation to the applicable IRS standards.

*Home Mortgage/Rent Expense (Schedule J, Line 1).*  The relevant monthly mortgage expense allowance for a family size of three in Pottawattamie County is $662.00.  At the time of filing, Debtor owned and resided at 1609 Skyline Drive, a custom built property in Pottawattamie County, Iowa.  On Schedule J, Debtor claimed actual monthly mortgage expenses of $3,395.96 that included a home mortgage payment of $2,746.64, homeowner's insurance of $117.66 and real estate tax expenses of $531.66.

Much of the testimony regarding 1609 Skyline Drive dealt with the circumstances surrounding Debtor's purchase of that property and her subsequent efforts to negotiate a loan modification with the lender.  However, it is clear that Debtor surrendered the property shortly after commencing this case because she was unable to afford the mortgage and utility payments and was unable to accomplish a loan modification. Thereafter, Debtor entered into a 15-month lease with K & P Investments, Inc. for real

property located at 1322 Aster Circle, Council Bluffs, IA ("1322 Aster Circle"). Debtor's Exhibit 5, the lease agreement, reflects a monthly lease payment of 1,600.00 and an option to purchase the property. Debtor's Exhibit 7, a real estate contract regarding 1322 Aster Circle, indicates that Debtor purchased the property from K & P Investments for $225,000.00 and that the monthly payment amount was $1,552.26.[3]

The U.S. Trustee contends that Debtor could have secured a less expensive lease or contract payment by living elsewhere in Council Bluffs, Iowa. Mr. Vandenberg testified that he performed an Internet search of available rentals in that area and found prices ranging from $725.00 to $1,500.00. Though the monthly mortgage payment is slightly outside the range presented by the U.S. Trustee, the Court will deem that amount to be a reasonable and necessary amount for Debtor's housing ownership expenses and will reduce the claimed expenses under this category from $3,395.96 to $1,552.26.[4]

*Non-Mortgage/Utilities Expense (Schedule J, Lines 2(a)-(c))*. The relevant monthly non-mortgage utilities allowance for a family size of three in Pottawattamie County, Iowa is $387.00. On Schedule J, Debtor claimed actual nonmortgage utilities expenses of $522.92 that included $344.30 for electrical and heating fuel, $63.89 for water and sewer and $114.73 for telephone services.[5] These amounts reflect what Debtor expended while living at 1609 Skyline Drive. Neither party provided evidence of

---

[3] At the time of the August 7, 2008 hearing, Debtor testified that her current monthly payment at 1322 Aster Circle was $1,900.00 exclusive of taxes and insurance but offered no documentary evidence to that effect.
[4] Neither party provided any evidence regarding Debtor's actual expenses for homeowner's insurance and property tax, meaning the allowed amount is likely less than what Debtor expends in this category.
[5] Debtor also included $118.96 on Line 2(d) on Schedule J for "other" utilities. The U.S. Trustee did not challenge that amount. Parenthetically, the Court notes that the U.S. Trustee did not challenge two other expenses on Schedule J--$131.25 for medical and dental expenses on Line 7 and $76.00 for life insurance on Line 11(b).

Debtor's actual utility expenses at 1322 Aster Circle. Accordingly, the Court finds that the claimed expenses under this category should be reduced from $522.92 to the relevant IRS standard of $387.00.[6]

*Food, Clothing and Other Items (Schedule J, Lines 4-6, 9, 11(e), 13(b) and 17(a) and (b))*. The relevant monthly allowance for food, clothing and other items is $1,368.00. On Schedule J, Debtor claimed actual monthly expenses of $1,180.03 that included $600.00 for food, $150.00 for clothing, $50.00 for laundry and dry cleaning, $9.95 for recreation, clubs and entertainment, newspapers and magazines, $27.08 for an umbrella insurance policy, $60.00 for furniture, $200.00 for "miscellaneous" items and $83.00 for school lunches. The U.S. Trustee increased Debtor's expenses for this category to reflect the applicable IRS allowance. However, it is Debtor's actual expenses that are relevant to a totality of the circumstances analysis. Since the U.S. Trustee does not contest Debtor's actual expenses under this category, and nothing in the record supports a finding that these expenses are not actual, the Court finds that the claimed expenses of $1,180.03 are proper.

*Transportation Operating (Schedule J, Lines 8 and 11(d))*. The relevant monthly allowance for transportation operating expenses for one vehicle is $275.00. On Schedule J, Debtor claimed actual monthly expenses of $510.04 for this category. That amount included $350.00 for transportation and $160.04 for automotive insurance. The U.S. Trustee argues that taking the bus to and from work would significantly decrease Debtor's actual transportation operating expenses. Since this Court has found it reasonable and necessary for Debtor to have access to a vehicle at work, it follows that Debtor's actual operating expenses are reasonable and necessary under the

---

[6] Like 1609 Skyline Drive, 1322 Aster Circle is located in Pottawattamie County, Iowa.

circumstances. Further, the U.S. Trustee does not dispute that these are Debtor's actual expenses under this category, and nothing in the record supports a finding to the contrary. Accordingly, the Court finds that the claimed expenses of $510.04 for this category are reasonable and necessary.

*Transportation Ownership (Schedule J, Line 13(a))*. The relevant monthly allowance for transportation ownership expenses for one vehicle is $471.00. On Schedule J, Debtor claimed an actual monthly lease payment of $221.90 for a 2007 Hyundai Santa Fe. The U.S. Trustee increased Debtor's expense for this category to reflect the applicable IRS allowance. However, again, it is Debtor's actual expense that is relevant to a totality of the circumstances analysis. Since the U.S. Trustee does not contest Debtor's actual expense under this category, and nothing in the record supports a finding that this expense is not actual, the Court finds that the claimed expense of $221.90 is proper.

*Regular Expenses from Operation of Business (Schedule J, Line 16)*. On Schedule J, Debtor indicates that she expends $696.92 per month on her court reporting transcription business. The U.S. Trustee would omit this expense from her budget. Whereas the previously mentioned Schedule C supporting Debtor's 2007 Form 1040 reflected total business expenses of $3,140.00 and that amount divided by twelve months equals $261.67, the Court finds that Debtor's average monthly business expenses should be reduced from $696.62 to $261.67.

<u>Monthly Balance</u>

The sum of the allowed monthly expenses is $4,970.77. Subtracting that amount from the monthly net income of $4,853.48 yields $117.29 negative monthly disposable

income, meaning that Debtor does not have the ability to provide any repayment to her unsecured creditors.

## CONCLUSION

WHEREFORE, the Court finds that the United States Trustee has not carried his burden of proving under a totality of the circumstances analysis that granting relief would be an abuse of the provisions of Title 11 of the United States Code and, therefore, the U.S. Trustee's 11 U.S.C. section 707(b)(1) motion to dismiss must be denied.

A separate Order shall be entered accordingly.

Lee M. Jackwig
LEE M. JACKWIG
U.S. BANKRUPTCY JUDGE

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter 7 Case